UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LIONHEART DEVELOPMENT, LLC.,            CIVIL ACTION
ET AL.

VERSUS                                                       NO: 08-4070

APEX BUILDING SYSTEMS, LLC,            SECTION: R(1)
ET AL.

**ORDER AND REASONS**

Before the Court is the Estate of Robert Nipple and Apex Homes, Inc.'s motion to dismiss. For the following reasons, the Court DENIES the motion.

**I.    Background**

Plaintiffs Lionheart Development, LLC, Bob Barton d/b/a Gulf Coast Modular Homes, and GCMH, LLC are in the business of building prefabricated modular homes in Louisiana. Lionheart and GCMH are Louisiana limited liability companies with their principal place of business in New Orleans. Barton is a Louisiana resident. Lionheart, GCMH and Barton each contracted

with defendant Apex Building Systems, LLC for materials to build prefabricated homes after Hurricane Katrina.  Apex Building is a Georgia limited liability company, and is alleged to be an alter ego of defendant Apex Homes, Inc., a Pennsylvania corporation that manufactures prefabricated residential and commercial modular homes and units.  Robert Nipple, a former Pennsylvania resident, was the sole owner and President of Apex Homes.  Nipple owned a 61.176% share of Apex Building and was quite involved with the company.  Plaintiffs allege that Nipple regularly traveled to Louisiana on behalf of Apex Building to make sales calls and inspect its products.  Nipple also met with the manager of Apex Building every Friday in Pennsylvania.  Further, Nipple guaranteed Apex Building's initial financing in two capacities: (1) individually, and (2) as Apex Homes' President.

Nipple died on November 23, 2007, intestate, and was survived by four children:  Chriss Nipple, Lorne Nipple, Theresa Nipple and Shannon Nipple.  Chriss Nipple is the administrator of the Nipple Estate, which is governed by the intestate laws of Pennsylvania.  Chriss Nipple is also a resident of Pennsylvania. Because Robert Nipple owned 100% of Apex Homes, the Nipple Estate currently owns Apex Homes.

Plaintiffs allege that the Nipple Estate, along with Apex Homes' employee Kent Jenkins, closed Apex Building without any

input from the other shareholders and without notice to Apex Building's employees, owners, and customers. Because of this closure, Apex Building allegedly failed to perform its contracts with plaintiffs. Plaintiffs sued Apex Building, Apex Homes, and the Nipple Estate for breach of contract, violation of the Louisiana Unfair Trade Practices Act, conversion, fraudulent inducement to enter a contract, and defamation. (R. Doc. 1-1). Defendants Apex Homes and the Nipple Estate now move to dismiss for lack of personal jurisdiction and/or *forum non conveniens*.

**II. Personal jurisdiction**

    **A. Legal Standard**

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that personal jurisdiction exists. *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The allegations in the complaint, unless controverted by opposing affidavits, must be taken as true, and all factual conflicts must be resolved in favor of the plaintiff. *See Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). In making its determination, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of . . . recognized [discovery] methods." *Id.*

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute extends jurisdiction to the full limits of due process, *see* La. Rev. Stat. § 13:3201(B), the Court must determine only whether the exercise of its jurisdiction in this case satisfies federal due process requirements. The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts may give rise either to "specific" personal jurisdiction or "general" personal jurisdiction. *See id.* Specific jurisdiction exists when a plaintiff's cause of action arises from or is related to the defendant's minimum contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

414 n.8 (1984); *Wilson*, 20 F.3d 644 at 647. General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contact with the forum state, if the defendant has engaged in "systematic and continuous" activities in the forum state. *See Helicopteros*, 466 U.S. at 414 n.9; *Wilson*, 20 F.3d at 647.

**B. Discussion**

Defendants contend that the Court lacks personal jurisdiction over the Nipple Estate, since the estate is considered a resident of Pennsylvania and has no contacts with Louisiana. Defendants do not dispute the Court's jurisdiction over Apex Building or Apex Homes. Plaintiffs argue that the Nipple Estate's role in the closure of Apex Building establishes specific jurisdiction over the estate.[1] Plaintiffs also contend that Robert Nipple's visits to Louisiana establish specific jurisdiction over the estate.

The Fifth Circuit has noted that exercising personal jurisdiction over an estate probated in a foreign district presents particular jurisdictional problems. *See Religious Tech. Ctr. v. Liebrich*, 339 F.3d 369, 373 (5th Cir. 2003). If the

---

[1] Plaintiffs also make several arguments with respect to the Court's jurisdiction over Apex Homes, but since defendants do not dispute jurisdiction over Apex Homes, *see* R. Doc. 21, the Court need not consider these arguments.

5

district court lacks *in rem* jurisdiction over the estate, jurisdiction may be established through *in personam* jurisdiction. *Id.* 373-74. The Court has *in personam* jurisdiction over an estate if the estate *or* the decedent has purposefully availed itself of the laws of the forum state and exercising jurisdiction does not offend traditional notions of fair play and substantial justice. *See id.; Songbyrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 180-81 (2d Cir. 2000). The Court may exercise general jurisdiction over an estate if the estate's personal representative, while acting on behalf of the estate, engaged in continuous and systematic contacts with the forum state. *Religious Tech*, 339 F.3d at 374. Specific jurisdiction may be found if the estate's representative purposefully directed the estate's activities at residents of the forum and the alleged injuries arose from those activities. *Id.* at 375. Alternatively, if a decedent has minimum contacts with a forum state that establish either specific or general jurisdiction, those contacts create jurisdiction over the estate as well. *See Songbyrd*, 206 F.3d at 180-81. Louisiana's long-arm statute extends jurisdiction to nonresidents to the full extent allowed under the Due Process Clause. *See* La. Rev. Stat. Ann. § 13:3201(B); *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990). A "nonresident" is defined to include an "executor, administrator,

or other legal representative" of an individual. La. Rev. Stat. § 13:3206. Thus long-arm jurisdiction exists over an executor with respect to a cause of action against a decedent arising from the decedent's activity within the state. *Songbyrd*, 206 F.3d at 180-81; *see also Crosson v. Conlee*, 745 F.2d 896, 901 (4th Cir. 1984) (finding that Virginia's similar long-arm statute conferred jurisdiction over an estate when personal jurisdiction could have been obtained over the decedent in his lifetime); *Eubank Heights Apartments, Ltd. v. Lebow*, 615 F.2d 571, 574 (1st Cir. 1980) (finding that Texas's long-arm statute conferred jurisdiction over decedent's estate because "[i]f the Texas long arm would have reached the decedent, we do not believe it withered on his death.").

Plaintiffs contend that the Court has specific jurisdiction over the Nipple Estate because of Robert Nipple's contacts with Louisiana. To determine whether specific jurisdiction exists, the Fifth Circuit has developed a three-step analysis. *Seiferth v. Helicopteros Atuneros, Inc.* 472 F.3d 266, 271 (5th Cir. 2006). The Court must look to (1) whether the defendant had minimum contacts and purposefully directed its activities toward the forum state or purposefully availed itself of conducting activities there; (2) whether the cause of action arises out of defendant's contacts with the forum state; and (3) whether the

7

exercise of personal jurisdiction is fair and reasonable. *Id.* (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

Plaintiffs have provided evidence that Robert Nipple: (1) spoke to Bob Barton about his contract with Apex Building for prefabricated modular homes; (2) flew down to New Orleans at least three times to inspect the modular homes and the problems with the homes; (3) hired RCI, LLC, a Louisiana company, to perform repairs to modular homes in Louisiana; and (4) came to Louisiana to conduct sales calls on behalf of Apex Homes and Apex Building. (R. Doc. 10, Exhibit B).

The Court finds that Nipple purposefully availed himself of the benefits and protections of the laws of Louisiana such that he could "reasonably anticipate being haled into court" here. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). Nipple was the president and sole shareholder of Apex Homes and the majority shareholder who was involved in managing Apex Building, the company that contracted with the plaintiffs to deliver modular homes to New Orleans. Nipple's visits and phone calls were all in connection with Apex Building's contracts with Louisiana companies. When deciding whether minimum contacts with the forum state arose from a contract, the Court evaluates "prior

negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Latshaw*, 167 F.3d at 211. The Fifth Circuit also looks to the place of contractual performance in determining whether a contract with an in-state resident qualifies as purposeful availment. *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 337-38 (5th Cir. 1999)). Here, Nipple's role in negotiating and dealing with the contracts suggests that he purposefully directed his activities at the forum state. Nipple came to Louisiana both to conduct sales calls with Louisiana companies and to inspect the modular homes Apex Building supplied. Nipple's contacts with the state were not fortuitous or unilateral. Nipple specifically marketed Apex Building's products to Louisiana companies with the understanding that the modular homes would remain in Louisiana. Nipple's role did not end with the sale, as he later inspected the modular homes and even hired a Louisiana company to conduct repairs on the homes. Nipple's continuing role in Apex Building's contracts with Louisiana companies shows that he purposefully availed himself of the laws of this state.

Further, Nipple's contacts with the forum state show that he could reasonably anticipate being haled into court here. Bob Barton's affidavit suggests that at least one of Nipple's visits to Louisiana was in an effort to inspect the problems Barton had

9

with some homes manufactured by Apex Building. (R. Doc. 10, Exhibit B). Such a visit would put Nipple on notice that he might be sued. *Cf. Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 387 (5th Cir. 2008) (finding that defendants' letter directed to the forum state did not establish specific jurisdiction since it did not evidence an anticipation of being sued in the state or put the party on notice that it might be sued). Thus Nipple's activities sufficiently establish the first prong of specific jurisdiction. *See Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 379 (5th Cir. 2002) ("[A] single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact.") (citation omitted).

Moreover, plaintiffs' claims "arise out of or relate to" Nipple's contacts with Louisiana. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). Plaintiffs' claims arise out of their contracts with Apex Building, and Nipple's activities in Louisiana were all in connection with those contracts. Accordingly, plaintiffs' cause of action relates to Nipple's contacts with the forum state, and the Court would have had specific jurisdiction over Nipple had he been alive. The Louisiana long-arm statute thus extends jurisdiction over his estate. *See* La. Rev. Stat. § 13:3206; *Songbyrd*, 206 F.3d at 180-81.

The Court must next consider whether asserting specific jurisdiction offends "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. 310, 316 (1945). This prong of the analysis requires consideration of "the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and the basic equities." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Southwest Offset, Inc. v. Hudco Publ'g Co.*, 662 F.2d 149, 152 (5th Cir. 1980)). Defendants contend that exercising jurisdiction over the estate would greatly burden the estate's representatives that would have to travel from Pennsylvania to Louisiana.

The Court finds that the inconvenience of the estate's representatives does not offend traditional notions of fair play and substantial justice. Although exercising jurisdiction in Louisiana would be inconvenient for the estate, exercising jurisdiction elsewhere would be similarly inconvenient for the plaintiffs. Further, Louisiana has an interest in adjudicating disputes involving its citizens. As such, the Court finds that exercising jurisdiction over the Nipple Estate is proper, and DENIES defendants' motion to dismiss for lack of personal jurisdiction.

**III. *Forum non conveniens***

   **A.   Legal standard**

The *forum non conveniens* doctrine essentially allows a court to decline jurisdiction and dismiss a case, even when the case is properly before the court, if the case may be more conveniently tried in another forum. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).  The doctrine "rests upon a court's inherent power to control the parties and the cases before it and to prevent its process from becoming an instrument of abuse or injustice." *In re Air Crash Disaster Near New Orleans v. Pan American World Airways, Inc.*, 821 F.2d 1147, 1153, 54 (5th Cir. 1987)(en banc), *vacated on other grounds sub nom., Pan Am World Airways, Inc. v. Lopez*, 490 U.S. 1032, 104 L. Ed. 2d 400, 109 S. Ct. 1928 (1989), *opinion reinstated on other grounds*, 883 F.2d 17 (5th Cir. 1989)(en banc).  The doctrine allows dismissal of a case "because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else." *In re Volkswagen*, 545 F.3d at 313 n.8 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Because the doctrine "not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely," it is subject

to "careful limitation." *Id.*

In analyzing whether a case should be dismissed for *forum non conveniens,* the Court must first determine whether there exists an alternative forum. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007). An alternative forum exists if the forum is both available and adequate. *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000). A forum is available if "the entire case and all parties can come within the jurisdiction of that forum." *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379 (5th Cir. 2002) (citing *In re Air Crash Disaster*, 821 F.2d at 1165). A forum is adequate if the parties will not be deprived of all remedies or treated unfairly. *See Alpine View*, 205 F.3d at 221. If the defendants show that an alternative forum exists, the Court must then consider whether certain private and public interest factors weigh in favor of dismissal. *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 424 (5th Cir. 2001). Defendants bear the burden of persuading the court that a lawsuit should be dismissed on *forum non conveniens* grounds. *DTEX*, 508 F.3d at 794.

**B.    Discussion**

Defendants have shown that an alternate forum exists that is both available and adequate. Defendants suggest Pennsylvania state court as an alternative forum for plaintiffs' claims.

13

Pennsylvania state court is both an available and adequate forum since all defendants would come within its jurisdiction and plaintiffs have not shown that they would be denied remedies or treated unfairly. *See DTEX*, 508 F.3d at 796 (the substantive law of a foreign forum is presumed adequate unless there is a showing to the contrary).

The Court must next consider the private and public interest factors enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). *See In re Volkswagen*, 545 F.3d at 315. The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. *In re Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

The defendants have not carried their burden of persuading the Court that the lawsuit should be dismissed. Defendants first

14

argue that two private factors support dismissal of plaintiffs' complaint. Defendants note that much of the evidence relevant to plaintiffs' claims is located in Pennsylvania and that several witnesses they would call reside in Pennsylvania, beyond the Court's subpoena power. But as plaintiffs are Louisiana companies, their evidence and witnesses are located in Louisiana. Since the evidence and witnesses are likely split between Pennsylvania and Louisiana, these factors are neutral and do not weigh in favor of transfer.

Defendants assert that a number of public interest factors weigh in favor of transfer as well. Defendants note that the courts in Union County, Pennsylvania, where the estate is being administered, have relatively uncongested dockets. Defendants also contend that since the estate is being probated in a Pennsylvania court, the public interest is served by having the case tried in Pennsylvania. Defendants concede that it is unclear whether Pennsylvania or Louisiana law will apply to the case.

Defendants have not shown that the public interest factors weigh in favor of transfer. Defendants assert that the state courts in Pennsylvania have relatively uncongested dockets, but have provided no evidence to support this contention. Defendants have also not shown that Pennsylvania law applies to the case.

And while Pennsylvania may have an interest in issues relevant to an estate probated in its courts, Louisiana similarly has an interest in issues affecting Louisiana companies and Louisiana citizens. Accordingly, the Court finds that defendants have not met their burden of proving that the case must be dismissed on *forum non conveniens* grounds.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES defendants' motion to dismiss.

New Orleans, Louisiana, this  5th  day of January, 2009

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE