UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LIONHEART DEVELOPMENT, LLC.,                    CIVIL ACTION
ET AL.


VERSUS                                          NO: 08-4070


APEX BUILDING SYSTEMS, LLC,                     SECTION: R(1)
ET AL.


## ORDER AND REASONS

Before the Court are the motions to dismiss for lack of
personal jurisdiction of Francis C. Musso and Kent Jenkins.[1]  For
the following reasons, the Court GRANTS both motions.


## I.    BACKGROUND

Plaintiffs Lionheart Development, LLC, Bob Barton d/b/a Gulf
Coast Modular Homes, and GCMH, LLC are in the business of
building prefabricated modular homes in Louisiana.  Lionheart and
GCMH are Louisiana limited liability companies with their

---

[1]     (R. Doc. 73; R. Doc. 80.)

principal places of businesses in New Orleans.  Barton is a
Louisiana resident.  Lionheart, GCMH and Barton each contracted
with defendant Apex Building Systems, LLC (Apex Building) for
materials to build prefabricated homes after Hurricane Katrina.
Apex Building entered into contracts with plaintiffs allegedly
under the name, Apex Homes, LLC.  Apex Building is a Georgia
limited liability company and is alleged to be an alter ego of
defendant Apex Homes, Inc. (Apex Homes), a Pennsylvania
corporation that manufactures prefabricated residential and
commercial modular homes and units.

Robert Nipple, a former Pennsylvania resident, was the sole
owner and President of Apex Homes.  Nipple also owned a 61.176%
share of Apex Building.  Plaintiffs allege that Nipple regularly
traveled to Louisiana on behalf of Apex Building to make sales
calls and inspect its products.  Nipple also met with the manager
of Apex Building every Friday in Pennsylvania.  Further, Nipple
guaranteed Apex Building's initial financing in two capacities:
(1) individually, and (2) as Apex Homes's President.

Nipple died on November 23, 2007, intestate, and was
survived by four children:  Chriss Nipple, Lorne Nipple, Theresa
Nipple and Shannon Nipple.  Chriss Nipple is the administrator of
the Nipple Estate, which is governed by the intestate laws of
Pennsylvania.  Chriss Nipple is also a resident of Pennsylvania.

Because Robert Nipple owned 100% of Apex Homes, the Nipple Estate currently owns Apex Homes.

Plaintiffs allege that the Nipple Estate, along with Apex Homes's employees, closed Apex Building without any input from the other shareholders and without notice to Apex Building's employees, owners, and customers. Because of this closure, Apex Building allegedly failed to perform its contracts with plaintiffs.

On June 25, 2008, plaintiffs sued Apex Building, Apex Homes, and the Nipple Estate for breach of contract, violation of the Louisiana Unfair Trade Practices Act, conversion, fraudulent inducement to enter a contract, and defamation.[2] Defendants removed the case to this Court on July 30, 2008, based upon the diversity of citizenship. On October 1, 2009, plaintiffs amended their complaint and named Francis C. Musso and Kent Jenkins as additional defendants.[3] Jenkins is the vice-president of finance of Apex Homes and a resident of Pennsylvania. Musso, also a resident of Pennsylvania, is a consultant whom the Apex defendants hired after Robert Nipple's death. Apex Homes hired Musso to assist with the accounting and closure of Apex

---

[2]    (R. Doc. 1.)

[3]    (R. Doc. 61.)

3

Building's outstanding contracts and obligations, including Apex

Building's contracts with plaintiffs.  Plaintiffs' specific

allegations against Jenkins and Musso include intentional and

negligent misrepresentations, defamation, and failure to disclose

the their agency relationship with the Apex defendants.[4]  Jenkins

and Musso now move to dismiss for lack of personal jurisdiction

under Federal Rule of Civil Procedure 12(b)(2).[5]  Musso also

moves the Court to dismiss plaintiffs' defamation claim against

him under Federal Rule of Civil Procedure 12(b)(6).[6]

## II.  LEGAL STANDARD

When a nonresident defendant files a motion to dismiss for

lack of personal jurisdiction, the plaintiff bears the burden to

show that personal jurisdiction exists.[7]  The allegations in the

complaint, unless controverted by opposing affidavits, must be

taken as true, and all factual conflicts must be resolved in

---

[4]     *Id.*

[5]     (R. Doc. 80; R. Doc. 73.)

[6]     (R. Doc. 80.)

[7]     *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

4

favor of the plaintiff.[8]  In making its determination, the court

may consider "affidavits, interrogatories, depositions, oral

testimony, or any combination of . . . recognized [discovery]

methods."[9]

A court has personal jurisdiction over a nonresident

defendant if (1) the forum state's long-arm statute confers

personal jurisdiction over that defendant, and (2) the forum

state's exercise of jurisdiction complies with the Due Process

Clause of the Fourteenth Amendment.[10]  Because Louisiana's long-

arm statute extends jurisdiction to the full limits of due

process, the Court must determine only whether the exercise of

its jurisdiction in this case satisfies federal due process

requirements.[11]  The exercise of personal jurisdiction over a

nonresident defendant satisfies due process when (1) the

defendant has purposefully availed itself of the benefits and

protections of the forum state by establishing "minimum contacts"

with that state and (2) exercising personal jurisdiction over the

---

[8]     *See Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162,
1165 (5th Cir. 1985).

[9]     *Id.*

[10]    *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.
1999).

[11]    *see* La. Rev. Stat. § 13:3201(B)

defendant does not offend "traditional notions of fair play and substantial justice."[12]

Minimum contacts may give rise either to "specific" personal jurisdiction or "general" personal jurisdiction.[13] Specific jurisdiction exists when a plaintiff's cause of action arises from or is related to the defendant's minimum contacts.[14] General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contact with the forum state, if the defendant has engaged in "systematic and continuous" activities in the forum state.[15]

## III. DISCUSSION

### A. Francis C. Musso

Musso contends that the Court lacks personal jurisdiction over him because his telephone and email communications with

---

[12]    *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[13]    *See id.*

[14]    *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

[15]    *See Helicopteros*, 466 U.S. at 414 n.9; *Wilson*, 20 F.3d at 647.

plaintiffs do not establish sufficient contacts with Louisiana.[16]
Plaintiffs argue, on the other hand, that Musso's telephone and
email correspondence are sufficient contacts with Louisiana for
jurisdictional purposes.[17] Plaintiffs also contend that Musso
"expressly aimed" his conduct toward Louisiana by committing an
intentional tort outside the state of Louisiana, which has had
consequences or effects within Louisiana.[18] Musso is not a
Louisiana resident, has never traveled to Louisiana, and has no
ownership interest in either of the Apex defendants.[19]

The documentary evidence, including Musso's deposition and
affidavit, demonstrate that Apex Homes hired Musso after Robert
Nipple's death to "look at [Apex Homes] and its cash flow . . .
and to help with [Robert Nipple's] estate and the analysis of the
estate."[20] In this role, Musso attempted to ascertain a value
for certain estate entities, including Nipple's ownership
interest in Apex Building. As Musso stated in his deposition:

We looked at the entities of the estate, we looked at the

---

[16]    (R. Doc. 73.)

[17]    (R. Doc. 90.)

[18]    *Id.* (citing *Guidry v. United States Tobacco Co.,* 188
F.3d 619, 628 (5th Cir. 1999)).

[19]    (R. Doc. 73; Musso Aff. ¶ 5, 6, 10.)

[20]    (R. Doc. 90, Ex. A; Musso Dep. 7:8-15.)

7

> financial records of them, tried to look at the accounts
> payable, accounts receivable, develop some type of a cash
> flow analysis, look at the individual businesses as to
> their viability and try to help the attorneys with
> understanding what the values were and whether the estate
> had a positive value.[21]

In order to value Apex Building, Musso contacted Apex Building's customers and vendors, including plaintiffs here.[22] It is these contacts that are at issue now.

To determine whether specific jurisdiction exists, the Fifth Circuit has developed a three-step analysis.[23] The Court must look to (1) whether the defendant had minimum contacts and purposefully directed its activities toward the forum state or purposefully availed itself of conducting activities there; (2) whether the cause of action arises out of defendant's contacts with the forum state; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[24] Specific jurisdiction "may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the

---

[21]    (R. Doc. 90, Ex. A; Musso Dep. 7:21-8:2.)

[22]    (R. Doc. 90, Ex. A; Musso Dep. 28:11.)

[23]    *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

[24]    *Id.* (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

commission of a single act directed at the forum."[25] Jurisdiction over employees of a corporation "may not be predicated on jurisdiction over the corporation itself, but must be based on their individual contacts with the forum state."[26] In other words, Musso's contacts with Louisiana "are not to be judged according to [his employer's] activities there."[27] The Court must address Musso's conduct individually.[28]

The Court lacks specific jurisdiction over Musso with regard to plaintiffs' claims against him. The Court recognizes that by transmitting emails and calling plaintiffs in Louisiana, Musso arguably directed his activity toward the state.[29] Nonetheless, plaintiffs' claims do not "arise out of or result from" Musso's contacts with Louisiana, and therefore plaintiffs have failed to

---

[25] *Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir. 1990).

[26] *Lee v. Allen*, 32 F.3d 566, *3 (5th Cir. 1994).

[27] *Calder v. Jones*, 465 U.S. 783, 790 (1984).

[28] See *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)("The requirements of International Shoe ... must be met as to each defendant over whom a state court exercises jurisdiction"); *Seiferth*, 472 F.2d at 266 (plaintiff must establish specific jurisdiction for each claim).

[29] *Renoir v. Hantman's Associates, Inc.*, 230 Fed. App'x 357, **2 (5th Cir. 2007)("A single act directed at the forum state can confer personal jurisdiction.")

satisfy the second of the Fifth-Circuit's three-step analysis.[30]

First, with regard to plaintiffs' intentional or negligent misrepresentation claim, plaintiffs' amended complaint and the discovery materials attached to plaintiffs' opposition motion do not state who said what to whom, or when.[31] There is no evidence of contacts between Musso and Louisiana until 2008, after the Apex defendants allegedly breached plaintiffs' contracts and after the death of Robert Nipple.[32] Plaintiffs do not point to any communication with Musso that was either false or misleading. As a result, plaintiffs do not present a *prima facie* case linking Musso's contacts with their intentional or negligent misrepresentation claim.

Plaintiffs suggest in their opposition brief that Musso made fraudulent misrepresentations during attempts to settle the current litigation.[33] Even if Musso's communications with plaintiffs demonstrate a desire to settle the existing litigation, his contacts with Louisiana must relate to cognizable

---

[30]    *Seiferth*, 472 F.3d at 275.

[31]    (R. Doc. 61; R. Doc. 90.)

[32]    (R. Doc. 90; Musso Dep. (discussing phone calls with plaintiffs).)

[33]    (R. Doc. 90 (desribing efforts to "mitigate damages" from the current litigation).)

legal claims.[34]  Plaintiffs do not allege that Musso made a

settlement offer to them, that they detrimentally relied on

Musso's statements pertaining to a potential settlement, or that

they were injured in any way by Musso's efforts to settle the

litigation.[35]  Nor do Musso's emails with plaintiffs' counsel,[36]

without more, support an independent claim of fraud.[37]  Although

Musso indicates in his emails Apex Building's "interest[] in

settling all claims," he does not put forward a settlement offer

and plaintiffs do not argue that any settlement agreement between

the parties was ever reached.[38]  In fact, Musso's emails indicate

that without further information from plaintiffs, Musso is "not

in a position to either recommend accepting or rejecting

---

[34]    *See Seiferth*, 472 F.2d at 266 ("Permitting the
legitimate exercise of specific jurisdiction over one claim to
justify the exercise of specific jurisdiction over a different
claim that does not arise out of or relate to the defendant's
forum contacts would violate the Due Process Clause.")

[35]    (R. Doc. 90.)

[36]    (R. Doc. 10, Ex. F.)

[37]    *See Guidry*, 188 F.3d 619 at 627 (requiring that fraud
be pled with particularity); *Shelton v. Standard/700 Assocs.*, 798
So.2d 60, 64 (La. 2001)(stating elements of fraud claim as (1)
misrepresentation of a material fact; (2) made with the intent to
deceive; and (3) causing justifiable reliance with resultant
injury).

[38]    (R. Doc. 10, Ex. F; R. Doc. 90.)

[plaintiffs'] settlement offer."[39]  The Fifth Circuit has clearly
indicated that "jurisdiction must not be based on the fortuity of
one party residing in the forum state."[40]  Here, the only
connection between Musso's contacts, Musso's alleged settlement
efforts and Louisiana is the fact that plaintiffs happen to
reside in Louisiana.  Without more, the Court cannot exercise
jurisdiction over Musso.[41]

Second, plaintiffs also fail to connect Musso's Louisiana
contacts with their claim that Musso failed to disclose the
nature of his agency relationship with the Apex defendants.  In
support, plaintiffs point to statements Musso made in his
deposition.[42]  But Musso's deposition occurred in Pennsylvania
and is not a cognizable contact with Louisiana.[43]  Plaintiffs
also point to Musso's settlement emails with plaintiffs' counsel
as applicable contacts with Louisiana.  Musso states in those
emails that he is a "consultant with Apex Building Systems,

---

[39]    (R. Doc. 10, Ex. F.)

[40]    *McFadin*, 587 F.3d at 760.

[41]    *See Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d
309, 312 (5th Cir. 2007).

[42]    (R. Doc. 90.)

[43]    (R. Doc. 90, Ex. A.)

12

LLC."[44]  Yet this does not evidence that Musso misrepresented on
whose behalf he was acting.  In his affidavit, Musso states that
all of his communication with plaintiffs was "on behalf of Apex
Building Systems, LLC, for the benefit of Apex Homes, Inc." and
that prior to any communication, Musso advised plaintiffs that he
was "communicating or negotiating on behalf of Apex Building
Systems, LLC."[45]  These statements are consistent with those in
Musso's deposition, in which Musso states that he was hired by
Apex Homes, Inc.[46]  Thus, plaintiffs do not put forward a *prima
facie* case that Musso directed any misrepresentations toward
Louisiana or that Musso misrepresented the nature of his agency
relationship with the Apex defendants, let alone that Musso's
contacts with Louisiana give rise to a separate cause of action
about his agency relationship with the Apex defendants.

Lastly, the Court must analyze whether it has specific
jurisdiction over Musso with respect to plaintiffs' defamation
claim.  The Fifth Circuit has found that a single, purposeful
contact with the forum state, such as a telephone call initiated
by the defendant, can permit the exercise of specific

---

[44]    (R. Doc. 10, Ex. F.)

[45]    (R. Doc. 73, Musso Aff. ¶ 8-9.)

[46]    (R. Doc. 90, Musso Dep. 5:20-21.)

jurisdiction in the defamation context.[47]  Plaintiffs' amended

complaint alleges that Musso spoke to plaintiffs' clients and

made false and misleading statements to them.[48]  Plaintiffs do

not assert that their clients reside in Louisiana, however, or

that Musso's conversations with their clients occurred in

Louisiana.[49]  Nor do plaintiffs assert any statement Musso made

in a communication to Louisiana that was false.[50]  Because

plaintiffs do not identify a defamatory statement, its content,

to whom it was made, and where it was transmitted, plaintiffs do

not establish that their defamation claim against Musso arose out

of his contacts with Louisiana.[51]

## C. Kent Jenkins

Like Musso, Jenkins argues that he does not have sufficient

---

[47]  *See, e.g., Brown v. Flowers Indus., Inc.*, 688 F.2d 328
(5th Cir. 1982), *cert. denied*, 460 U.S. 1023 (1983).

[48]  (R. Doc. 61.)

[49]  (R. Doc. 90.)

[50]  *Id.*

[51]  *See Scott v. Houma-Terrebonne Housing Authority*, 2002
WL 31007412, at *4 (E.D.La. 2002)(discussing pleading requirement
for defamation claim under Louisiana law); *St. Germain v. Coulon*,
887 So.2d 608, **6 (La. Ct. App. 2004)(same); *Juneau v. Avoyelles
Parish Policy Jury*, 482 So.2d 1022, 1028 (La. Ct. App.
1986)(general conclusory allegation of defamation is not
sufficient to state a cause of action); *Guilbeaux v. Times of
Acadiana, Inc.*, 661 So.2d 1027, **5 (La. Ct. App. 1995).

contacts with Louisiana for the Court to exercise personal jurisdiction over him.[52]  Specifically, Jenkins argues that he did not contract with plaintiffs; he was not part of any negotiations related to plaintiffs contracts with the Apex defendants; and he did not make any contact with plaintiffs from which their claims against him arise.[53]

The deposition and affidavit evidence demonstrates that apart from being an employee of Apex Homes, Jenkins's individual contacts with Louisiana are sparse.[54]  They consist of one phone conversation, which Jenkins did not initiate, and several email conversations between Musso and plaintiffs on which Jenkins was cc'd.[55]  Plaintiffs do not link Jenkins's phone call to any allegation of misrepresentation or defamation.  And even if plaintiffs did show some connection, the single phone call would have to be a tortious phone call initiated by Jenkins to support the Court's exercise of personal jurisdiction over him.[56]  But Barton's own deposition disputes that the single phone call was

---

[52]    (R. Doc. 80.)

[53]    *Id.*

[54]    (R. Doc. 80, Jenkins Aff. ¶ 2.)

[55]    (R. Doc 10, Ex. F; R. Doc. 85.)

[56]    *See, e.g., Brown v. Flowers Indus., Inc.*, 688 F.2d 328 (5th Cir. 1982), *cert. denied*, 460 U.S. 1023 (1983).

15

tortious or initiated by Jenkins. He states:

> Q: So, in relation to the claims you have against Apex you have spoken to Kent Jenkins one time and that was after the litigation was filed.
>
> A: Yes.
>
> Q: And no other e-mails or correspondence with Mr. Kent Jenkins?
>
> A: To the bets of my knowledge.
>
> Q: And during those conversations with Mr. Kent Jenkins, he never made any representations to you about what Apex would do or did?
>
> A: Correct.
>
> Q: In that conversation do you know who initiated the phone call? Did you call Mr. Jenkins or did he call you?
>
> A: I called him.[57]

Plaintiffs also argue that Jenkins's contacts with Louisiana include (1) personally registering Apex Homes to do business in Louisiana; (2) cancelling liability insurance policies issued to the Apex defendants; (3) engaging an independent salesperson, Thomas Lees, to sell Apex Homes's products; and (4) failing to correct plaintiffs' misconceptions about which Apex defendant Musso worked. First, Jenkins's registration of Apex Homes with the Louisiana Secretary of State and Jenkins's cancellation of liability insurance on behalf of the Apex defendants do not

---

[57]     (R. Doc. 93, Ex. C., Barton Dep.)

provide the Court with specific jurisdiction over Jenkins himself. A corporation's contacts do not confer personal jurisdiction over its employees, and plaintiffs do not allege a claim arising from Jenkins's physical actions in calling the Louisiana Secretary of State or cancelling the Apes defendants' insurance policies in Louisiana.[58]

Plaintiffs argument that Jenkins's contacts with Thomas Lees are sufficient for the Court to exercise personal jurisdiction over Jenkins is also misplaced. According to plaintiffs, Jenkins "regularly engaged in communications with Lees" to sell Apex Homes's product.[59] In an attached affidavit, Lees states that he is an independent sales representative for Apex Homes in Louisiana and regularly communicates with Jenkins.[60] Lees also states that Jenkins instructed him not to sell Apex Homes modular homes to plaintiffs and to try and resell those homes plaintiffs' had already purchased. Plaintiffs do not argue that Jenkins's contacts with Lees contained any misrepresentations or resulted in any statements being made to plaintiffs from which an

---

[58] *See Lee*, 32 F.3d at *3; *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001)("A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted.")

[59] (R. Doc. 85.)

[60] (R. Doc. 85, Ex. D, Lees Aff. ¶ 3.)

intentional misrepresentation or defamation claim might arise.[61]

Consequently, even assuming Jenkins maintains communication with

Lees in Louisiana, plaintiffs have not made a *prima facie* showing

of how Jenkins's contacts with Lees relate to this suit and to

their specific claims against Jenkins.

Finally, plaintiffs do not connect Jenkins's contacts with

Louisiana to their claim against him for failing to disclose his

agency status. Plaintiffs contend that "Jenkins never corrected

inaccurate representations made to the plaintiffs about Francis

Musso's role in this litigation." In support, plaintiffs cite

email conversations between Musso and plaintiffs' counsel carbon

copying Jenkins. Jenkins states in his affidavit that he works

for Apex Homes and has never been employed by Apex Building.[62]

Plaintiffs do not dispute this fact. Nor do plaintiffs provide

any evidence of when, where, or how Jenkins contacted Louisiana

and misrepresented who he was working for. Moreover, plaintiffs

do not cite any authority for the proposition that Jenkins's

failure to contact plaintiffs, or their counsel, is a sufficient

basis for the Court to exercise jurisdiction over him. Nor do

plaintiffs cite any authority supporting the proposition that

---

[61]    (R. Doc. 85.)

[62]    (R. Doc. 80, Jenkins Aff. ¶ 2, 8.)

Jenkins had a duty to correct any misinformation about Musso's agency relationship with the Apex defendants. "[W]hen the unilateral actions of a forum plaintiff merely involve or somehow relate to a nonresident who has in no way conducted some activity with or in the State, there may be a 'connection' between the nonresident and the plaintiff but there is no 'contact' between the nonresident and the forum such that jurisdiction will lie."[63]

None of Jenkins's contacts relate to plaintiffs' causes of action. Plaintiffs make an intentional misrepresentation claim but do not point to any false or misleading statement Jenkins made to them in Louisiana. Plaintiffs make a defamation claim but do not show that Jenkins's contacts with Louisiana contained defamatory statements or that, like Musso, Jenkins talked to plaintiffs' customers. Plaintiffs tender Jenkins's whole deposition and are still not able to demonstrate any contacts that would give rise to a defamation claim. Lastly, plaintiffs claim that Jenkins lied about his agency status but only argue that Jenkins failed to correct misstatements made by Musso about Musso's agency with the Apex defendants. Plaintiffs purport to

---

[63]    *Attwell v. LaSalle Nat. Bank*, 607 F.2d 1157, 1161 (5 Cir. 1979). *See also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (finding jurisdiction when non-forum defendant directed both "affirmative misrepresentations and omissions to the plaintiff in Texas").

submit a lot of evidence to support their opposition to Jenkins's
motion.  Yet none of the evidence contradicts Barton's own
statement that Jenkins's relevant contacts with Louisiana include
a single phone call that Jenkins did not initiate.  "Judges are
not like pigs, hunting for truffles buried in briefs."[64]  The
Court cannot exercise jurisdiction over Jenkins on the basis of a
single unrelated phone call that Jenkins himself did not
initiate.

## IV.  Conclusion

For the foregoing reasons, the Court GRANTS the motions to
dismiss for lack of personal jurisdiction of Francis C. Musso and
Kent Jenkins.[65]

It is so ordered.


New Orleans, Louisiana, this <u>31st</u> day of March, 2010.


*Sarah Vance*
_____
                SARAH S. VANCE
        UNITED STATES DISTRICT JUDGE


---

[64]     *See United States v. Dunkel*, 927 F.2d 955, 956 (7th
Cir. 1991).

[65]     (R. Doc. 73, 80.)